[S. F. No. 14373. In Bank.—October 28, 1932.]

ROBERT STAPLES, Appellant, v. JOHN F. LEIDECKER, Respondent.

Carter, Peterson & McDonough for Appellant.

William T. Paullin for Respondent.

WASTE, C. J.—Plaintiff appeals from a judgment entered in favor of the defendant in an action to terminate and dissolve an alleged "joint venture" and for an accounting.

Among other things, the complaint alleges that the plaintiff and defendant, uncle and nephew, respectively, entered into an oral agreement by the terms of which "they associated themselves together in a joint venture" for the purpose of manufacturing and distributing certain paper dispensers for which the defendant held letters patent; that it was mutually understood and agreed that the defendant was to transfer and assign his patent rights to a corporation thereafter to be organized and was to cause said corporation to issue forty-nine per cent of its authorized capital stock to the plaintiff in consideration of the latter's advancement of all funds necessary to finance the manufacture and distribution of such paper dispensers by such corporation; that plaintiff has advanced $4,820.48 for the purposes designated and has otherwise fully and faithfully performed his part of the agreement; that the defendant at all times has neglected and refused to transfer his patent rights to the corporation as agreed and has likewise neglected to organize such corporation and to cause it to issue forty-nine per cent of its capital stock to the plaintiff. The complaint then prays that the oral agreement between the parties be rescinded, the "joint venture" terminated, and an accounting ordered.

The answer denies the material allegations of the complaint and, by way of separate defense, alleges, in substance, that the parties entered into an oral agreement by the terms of which the plaintiff agreed to manufacture one thousand paper dispensers under defendant's letters patent and to procure and provide the dies necessary to manufacture other paper dispensers thereunder, and further agreed that he (plaintiff) would deliver both the dies and the one thousand paper dispensers to a corporation to be thereafter organized, whereupon the defendant was to transfer to the corporation his letters patent and was to cause the corporate entity to issue forty-nine per cent of its capital stock to the plaintiff. The answer then proceeds to allege that the corporation was organized but has never issued any stock or transacted any business by reason of the plaintiff's failure to perform the obligations imposed upon

him as a condition precedent, viz., the delivery to the corporation of one thousand paper dispensers and the dies necessary to manufacture others. The trial court, upon competent evidence, found the material allegations of the complaint to be untrue and those of the answer to be true.

The pleadings and the briefs herein disclose that the parties are at wide variance as to the terms and effect of their oral understanding. It has been the plaintiff's theory throughout that since the oral agreement looked to the formation of a corporation and provided for a division of its stock, any failure to consummate the same must necessarily result in a *quasi* partnership or joint venture arrangement calling for an accounting at the suit of either party to the contract. In support thereof he cites many authorities announcing the settled principle that when an agreement to form a corporation and divide its stock fails of consummation because of noncompliance with the statute or otherwise, equity in order to do justice will look through the veil and treat the relationship between the parties as one in the nature of *quasi* partnership or joint venture. We have no quarrel with the authorities stating this principle. They are inapplicable, however, to the facts of this case as found by the court below. The trial court found, in effect, that it was a condition precedent to the functioning of the proposed corporation or of any resulting joint venture, that plaintiff procure and deliver one thousand completed paper dispensers and the dies necessary to manufacture others, and that plaintiff's failure to perform his part of the contract was the sole and only reason for the inability of the parties to proceed as originally agreed.

As already intimated, these findings are supported by substantial evidence. The witness Schroeder, a patent attorney, testified that the parties came to his office at various times and that "the understanding as I got it, and what was mentioned thereafter, was, Mr. Staples [plaintiff] was to make not only the tools and dies, but 1000 of these paper dispensers. *When that had been done,* both parties were to assign their respective interests [the defendant's consisting of his patent rights] to the corporation and take stock for their respective interests." The witness also testified that each party had emphatically declared that he did not desire to enter into a partnership arrangement, with its

consequent liability for the copartner's debts, but desired to be obligated only as a stockholder in the corporation. Defendant's testimony also supports the findings of the court below.

All conflicts in the evidence have been resolved against the plaintiff by the trial court. We cannot disturb its conclusions in this particular. Inasmuch as the plaintiff has failed, and through no fault of the defendant, to perform the obligations imposed upon him as a condition precedent to the defendant's performance under the contract, plaintiff · is not in a position to charge the defendant with a breach thereof or to secure an accounting on the basis that the parties were engaged in a joint venture. In the absence of plaintiff's preliminary performance of the obligations imposed upon him, the relationship which he seeks to establish necessarily could not arise under the terms of the contract as found by the trial court. The agreement between the parties hereto never having been consummated, there are present no rights of third persons to complicate the solution of the problem here presented.

There is no merit in plaintiff's further contention that the oral preorganization contract between the parties is void under the provisions of the Corporate Securities Act. (Stats. 1917, p. 673, as amended.) We are referred to those sections of the cited act requiring a certificate of the commissioner of corporations as a prerequisite to a valid sale or transfer of securities. The contract here involved does no violence to any provision of the Corporate Securities Act. It was merely a preorganization agreement fixing the percentage of stock to be received by each party upon his full and faithful performance of the terms of the contract, which stock, impliedly at least, was to be thereafter issued only upon authorization of the commissioner of corporations. In other words, the contract is in the nature of a preorganization subscription agreement which is deemed to have been made and accepted upon the condition that the corporation, when incorporated, will with reasonable diligence apply for and secure a permit authorizing the issuance of the shares so subscribed for. (Corporate Securities Act, Stats. 1921, p. 1114, sec. 25; Stats. 1931, p. 958, sec. 33; 6 Cal. Jur. 781, sec. 184.) In the instant case the plaintiff having failed to perform his part of the contract,

the corporation advanced no further than the organization stage. It transacted no business and issued no stock. The necessity to procure a permit from the commissioner of corporations, therefore, never presented itself.

What has been said sufficiently disposes of this appeal.

The judgment is affirmed.

Curtis, J., Preston, J., Langdon, J., Shenk, J., Tyler, J., *pro tem.*, and Seawell, J., concurred.